# United States District Court

**WESTERN DISTRICT OF NEW YORK**

_____

LUDIN RODRIGO
JUAREZ-MONTENEGRO,

        _Petitioner_,

v.

TODD M. LYONS, _Acting Director_
_Immigration and Customs Enforcement,_
_et al._

        _Respondents._

_____

1:26-CV-419-BDP
**DECISION & ORDER**

Pending before the Court are Petitioner Ludin Rodrigo Juarez-Montenegro's

Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, Amended Habeas

Pet., ECF No. 1, and Respondents Todd M. Lyons, Acting Director Immigration and

Customs Enforcement, Joseph E. Freden, Immigration and Customs Enforcement Deputy

Field Office Director, Kristi Noem, Secretary of U.S. Department of Homeland Security,

Pamela Bondi, Attorney General of the U.S., and Donald J. Trump, President of the U.S.'s

("Respondents") motion to dismiss Petitioner's petition, Mot. to Dismiss, ECF No. 6.

Having considered the petition, motion to dismiss, and relevant filings, the Court

GRANTS the petition and DENIES the motion to dismiss.

## BACKGROUND[1]

Petitioner, a native and citizen of Guatemala, was previously ordered removed from the United States on May 12, 2014, and was removed from the United States on May 14, 2014. On March 28, 2019, Petitioner re-entered the United States without authorization and was issued a Notice of Intent/Decision to Reinstate Prior Order. On or about March 31, 2019, Petitioner was released from DHS custody on an order of supervision ("OSUP"). On September 15, 2025, U.S. Immigration and Customs Enforcement ("ICE") revoked Petitioner's OSUP, provided him with an informal interview, and took him back into Department of Homeland Security ("DHS") custody.

On September 16, 2025, Petitioner was issued a new Notice of Intent/Decision to Reinstate Prior Order. Petitioner claimed a fear of returning to Guatemala, so ICE referred Petitioner to U.S. Citizenship and Immigration Services ("USCIS") for a reasonable fear interview. On October 15, 2025, USCIS determined that Petitioner lacked a reasonable fear of persecution or torture. Petitioner then sought an Immigration Judge's ("IJ") review of that determination. On October 24, 2025, an IJ determined that Petitioner *had* established a reasonable fear of persecution or torture, vacated USCIS's prior reasonable fear determination, and placed Petitioner into "withholding only" proceedings.

---

[1] The undisputed facts are taken from the declaration of Deportation Officer Jacob Graf, attached to Respondents' Motion to Dismiss, *see* Graf Declaration, ECF No. 6-2, unless otherwise noted.

On March 9, 2026, Petitioner filed the instant Amended Petition for Writ of Habeas Corpus.  ECF No. 1.  On March 16, 2026, this Court issued an Order to Show Cause directing, inter alia, that Respondents shall show cause why Petitioner's requested relief should not be granted.  ECF No. 3.  On March 30, 2026, Respondents filed a motion to dismiss the petition, ECF. No. 6, and on April 6, 2026, Petitioner filed a response in opposition to Respondents' motion, ECF No. 7.  On April 9, 2026, following an individual hearing, an IJ denied Petitioner's "withholding only" application.  *See* Executive Office for Immigration Review, *Juarez-Montenegro, Ludin Rodrigo*, *A-206-737-448, 10/24/2025*, https://acis.eoir.justice.gov/en/caseInformation (last visited: May 27, 2026).  Petitioner appealed the IJ's denial of his "withholding only" application to the Board of Immigration Appeals ("BIA") on April 30, 2026.  *Id.*  His appeal remains pending.  *Id.* Petitioner is currently detained at the Buffalo Federal Detention Facility.  On May 1, 2026, the Clerk of Court reassigned this case to the undersigned.[2]

## LEGAL STANDARDS

### I.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b), a habeas petition may be dismissed for "lack of subject[]matter jurisdiction" or for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(1), (6); *see Williams v. DHS/ICE/Immigr. Ct.*, 2023 WL

---

[2]  On April 29, 2026, Chief Judge Debra A. Livingston of the U.S. Court of Appeals for the Second Circuit designated the undersigned to sit in the Western District of New York pursuant to 28 U.S.C. §294(c).

3585849, at *1 (W.D.N.Y. May 22, 2023) ("A court reviews a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)" (quotations omitted)).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court can refer to evidence outside the pleadings. *See id.*

A complaint is properly dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.    Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. §§ 2241(a), (c)(3)). Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. §

2241(c)(3)).  "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'"  *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).

## DISCUSSION

Petitioner asserts that his detention violates the Due Process Clause of the Fifth Amendment, 8 U.S.C. § 1231(a)(6), and 8 C.F.R. § 241.4.  Amended Habeas Pet., ECF No. 1 at 2.  Petitioner seeks his immediate release or, alternatively, a bond hearing before this Court, and an award of attorneys' fees and costs under the Equal Access to Justice Act. *Id.* at 10.

## I.    Statutory Background

The Immigration and Nationality Act ("INA") and its implementing regulations set forth the procedures for detaining, paroling, and removing noncitizens from the United States.

Where a noncitizen is found to have re-entered the country illegally after being removed, 8 U.S.C. § 1231(a)(5) instructs the government to "reinstate" the noncitizen's removal order.  Persons subject to reinstatement of removal are usually removed summarily upon their previous removal order, which is "reinstated from its original date." *Id.*; 8 C.F.R. § 241.8(a).  However, if a noncitizen subject to a reinstated removal

order expresses fear of being persecuted or tortured if returned to their home country, they must be interviewed by an asylum officer to determine if they have a "reasonable fear of persecution or torture" in that country. *See* 8 C.F.R. § 241.8(e). If the officer finds that the noncitizen has a reasonable fear, the noncitizen is referred to an IJ for proceedings to determine whether they qualify for "withholding of removal"—a form of protection from removal to a specific country in which an individual will suffer persecution or torture. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. §§ 208.16, 208.31(e); *see also* 8 C.F.R. § 1208.2(c)(3)(i). Following these "withholding-only" proceedings, either party may appeal an IJ's decision on a noncitizen's application for withholding of removal to the BIA. *See* 8 C.F.R. § 208.31(e). A noncitizen whose application for withholding of removal is denied by the BIA may then petition for review of the decision to the relevant federal court of appeals.

Section 241 of the INA, codified at 8 U.S.C. § 1231, governs the arrest and detention of noncitizens who have a final order of removal. It provides for mandatory detention during the 90-day removal period. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). After the 90-day removal period expires, Section 1231(a)(6) authorizes the detention of three classes of persons "beyond the removal period": noncitizens who are (1) inadmissible, (2) removable as the result of violations of certain status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) determined by

6

the Attorney General to be a risk to the community, or to be unlikely to comply with the order of removal.  *Id.* § 1231(a)(6).

If the noncitizen is not detained pursuant to Section 1231(a)(6) after the 90-day removal period and is also not removed, § 1231(a)(3) provides that "the [noncitizen], pending removal, shall be subject to [an order of] supervision under regulations prescribed by the Attorney General."  *Id.* § 1231(a)(3).  8 C.F.R. § 241.4 establishes the procedures ICE must follow to revoke that order of supervision or OSUP and re-detain a noncitizen under Section 1231(a)(6).  *See* § 241.4(a).  Relevant here, § 241.4(l)(2) provides that:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section.  A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner.  Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
> (i) The purposes of release have been served;
> (ii) The alien violates any condition of release;
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

## II.    Subject Matter Jurisdiction

At the threshold, Respondents argue that 8 U.S.C. §§ 1252(b)(9) and (g) strip this Court of jurisdiction to hear this this case.  Mot. to Dismiss MoL, ECF No. 6-1, at 3, 5. Petitioner responds that §1252 does not apply because he is not challenging his final

removal order, but merely the manner of his detention, which he alleges violated his due process rights and the regulations and statute governing revocations of OSUPs. Petitioner's Opp. To Mot. to Dismiss, ECF No. 7 at 2-5.  For the reasons he contends, this Court agrees with Petitioner.

Section 1252(g) provides that except for review by courts of appeals, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  However, as "both the Supreme Court and [the Second Circuit] have explained, § 1252(g)'s bar on jurisdiction is 'narrow.'"  *Öztürk v. Hyde*, 136 F.4th 382, 396 (2d Cir. 2025) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)) (citation modified).  It "does not preclude jurisdiction over the challenges to the legality of a noncitizen's detention." *Id.* at 397 (quoting *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023)) (citation modified).  Claims of unlawful detention do not fall within the meaning of § 1252(g) merely because they arise in a "but-for sense" from, or "relate to," a decision by immigration authorities to execute a removal order.  *Id.*  Section 1252(g) does not bar a petitioner's challenge to the manner of his detention where the challenge is "collateral to the Government's decision to execute the final order of removal."  *Zhu v. Genalo*, 798 F. Supp. 3d 400, 406–07 (S.D.N.Y. 2025).

8

Here, because Petitioner only challenges the manner of his detention, his petition is not barred by § 1252(g).  He contends that he was detained without the government first demonstrating that he could "[]not be safely released back to his community," or was a "flight risk."  Amended Habeas Pet., ECF No. 1 at 6,9.  He does not attack, directly or indirectly, any decision by immigration authorities to "commence proceedings, adjudicate cases, or execute removal orders[.]"  8 U.S.C. § 1252(g).  Nor does he request judicial review of his removal order.  *See id.* §§ 1252(a)(5), (b)(9).  Section 1252 therefore does not bar this Court from adjudicating Petitioner's habeas petition.  *See, e.g., Zhu*, 798 F. Supp. 3d at 406–07 (§ 1252 did not strip the district court's jurisdiction over the habeas petition arguing that the manner and length of petitioner's detention were unconstitutional); *Torres-Jurado v. Biden*, No. 19 Civ. 3595, 2023 WL 7130898, at *2 (S.D.N.Y. Oct. 29, 2023) ("Courts can review 'how' [d]efendants exercise their discretion because such a claim does not ask 'why the Secretary chose to execute the removal order' but rather 'whether the way [d]efendants acted accords with the Constitution and the laws of this country.'" (quoting *You Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018)); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) ("district courts . . . have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not"); *Lin v. Francis*, No. 25 CIV. 10001 (PAE), 2025 WL 3751855, at *2–3 (S.D.N.Y. Dec. 29, 2025) (same).

Likewise, claims of unlawful detention by noncitizens, like Petitioner's claim here, do not fall within the meaning of § 1252(b)(9). As another court in this District explained, "in *Jennings v. Rodriguez*, the Supreme Court rejected a reading of section 1252(b)(9) that would have limited detained noncitizens to challenging their detentions only through petitions for review of the underlying removal orders in the court of appeals." *Ceesay*, 781 F. Supp. 3d at 152 (citing 583 U.S. 281, 292–95 (2018)).

The cases Respondents cite do not change this analysis. Petitioner's Opp. To Mot. to Dismiss, ECF No. 7 at 5-6. *Singh* is distinguishable. *See Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012) (summary order). The *Singh* petitioner claimed that his detention was unlawful because the government illegally terminated his grant of asylum, resulting in the final order of removal under which he was detained. *Id.* Thus, because "the true error of law identified in [the] petition [wa]s [USCIS]'s legal conclusion that [the petitioner wa]s subject to a final order of removal," the court held that the "petition indirectly challenge[d] the validity of [a] final order of removal and the [government]'s ability to execute that order." *Id.* Unlike the petitioner in *Singh*, Petitioner here does not ask this Court to rule directly or indirectly on the lawfulness of his removal order; he only challenges his current detention.

*Tazu* is likewise distinguishable. *See Tazu v. Att'y Gen. United States*, 975 F.3d 292 (3d Cir. 2020). There, the government re-detained the noncitizen after previously releasing him on supervised release upon determining that it was unlikely he would be

10

removed in the foreseeable future. *Id.* at 294–95.  Unlike Petitioner's re-detention here, the government in *Tazu* detained the noncitizen immediately after receiving a passport from Bangladesh, the noncitizen's native country, to execute his removal order. *Id.* at 295. Here, Petitioner does not challenge ICE's ability to detain him for the purpose of imminently deporting him like the petitioner in *Tazu*. *See Ceesay*, 781 F. Supp. 3d at 153 (distinguishing the "*brief*" "door-to-plane" detention challenged in *Tazu* from a challenge to "ICE's ability to hold [the petitioner] in detention without adequate process for weeks and months on end"); *Compare* Amended Habeas Pet., ECF No. 1 *with Tazu*, 975 F.3d at 298–99.  Instead, he challenges the lawfulness of his detention following revocation of an OSUP.

Finally, *Westley* is likewise distinguishable. *See Westley v. Harper*, No. 25-229, 2025 WL 592788, (E.D. La. Feb. 24, 2025).  As another court in this District already articulated, *Westley* unpersuasively attempts to distinguish *Zadvydas* and *Jennings* on the grounds that those cases involved "prolonged detention" whereas "ICE intended to detain and deport" the petitioner in *Westley* "as soon as possible." *See Ceesay*, 781 F. Supp. 3d at 153 n.15 (quoting *Westley*, 2025 WL 592788, at *6 (quotations omitted)).

For these reasons, this Court has jurisdiction to consider Petitioner's petition.

### III.    Lawfulness of Detention

Having confirmed its subject matter jurisdiction, this Court now turns to the merits of the petition.

### A.      Whether Detention Was Mandatory

As an initial matter, the government contends that Petitioner is subject to mandatory custody under 8 U.S.C. § 1231(a)(5).  Mot. to Dismiss MoL, ECF No. 6-1, at 3. Not so.  A noncitizen's continued detention beyond the removal period is distinct from re-detention following release from ICE custody; noncitizens released on an OSUP have a constitutionally protected liberty interest and noncitizens are subject to the discretionary framework under § 1231(a)(6) instead of § 1231(a)(2)'s mandatory framework.  *See de Rodriquez v. Hyde*, No. 25-CV-13210-AK, 2026 WL 220416, at *2 (D. Mass. Jan. 28, 2026) (finding same).

### B.      Whether Detention Complied With Constitutional, Regulatory, and Statutory Requirements

Petitioner argues that the government violated his Fifth Amendment due process rights and the federal regulations controlling revocation of OSUPs by detaining him "without cause."  Amended Habeas Pet. at 6.  Petitioner also contends that the government violated 8 U.S.C. § 1231 by re-detaining him without first demonstrating that a change in circumstances rendered him a danger to the community or a flight risk.  *Id.* at 7-10.  Respondents argue that Petitioner's OSUP was properly revoked under 8 C.F.R. § 241.4 because it was revoked by an acting ICE Field Office Director "in order to execute Petitioner's reinstated order of removal" and Petitioner was "afforded . . . an informal

interview to respond to the reasons for the revocation."  Mot. to Dismiss MoL, ECF No. 6-1 at 7.  For the reasons that follow, Respondents are incorrect.

Because Petitioner was released from DHS custody in 2019 pursuant to an OSUP, he could not be taken back into DHS custody unless DHS complied with its own regulations governing the revocation of an OSUP.  *See Lopez v. Trump*, No. 25-CV-04826 (JAV), 2025 WL 3274224, at *7 (S.D.N.Y. July 10, 2025).  Both parties agree that 8 C.F.R. § 241 controls the procedures for revoking OSUPs.  *See* Mot. to Dismiss MoL, ECF No. 6-1. at 7; Petitioner's Opp. to Mot. to Dismiss, ECF No. 7 at 5-7.  "The language of section 241.4 specifically limits the power of anyone [except] the Executive Associate Director to revoke release . . . it provides that a district director may also revoke release of a noncitizen when—*and only when*—in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Director.'" *Ceesay*, 781 F. Supp. 3d at 161–62 (quoting 8 C.F.R. § 241.4(l)(2) (citation modified)).  Therefore, "before a district director can revoke release, the district director must make certain findings."  *Id.* at 162.  As one court correctly explained, "[w]hile ICE does have significant discretion to detain, release, or revoke aliens, the agency still must follow its own regulations, procedures, and prior written commitments . . . The Supreme Court has recognized that an alien may no doubt be returned to custody upon a violation of [supervision] conditions, but it has never given ICE . . . carte blanche

to re-incarcerate someone without basic due process protection." *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017) (quotations and citation omitted)).

Here, even assuming that acting Field Office Director Wesling was authorized to revoke Petitioner's OSUP, the government has not alleged that Director Wesling made the findings required by § 241.4(l)(2) before revoking Petitioner's OSUP. *See* Mot. to Dismiss MoL, ECF No. 6-1; Graf Declaration, ECF No. 6-2. Therefore, because no such finding has been made, the agency has violated its own regulations and, in doing so, Petitioner's due process rights. *See Ndoye v. Joyce*, No. 26-CV-1219 (VSB), 2026 WL 765635, at *4 (S.D.N.Y. Mar. 17, 2026) (holding that where "no such finding [that revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner] has been made, the agency has . . . disregarded the explicit text of its own regulation and violated Petitioner's due process rights." ); *Ceesay*, 781 F. Supp. 3d at 162 (holding that such findings of fact must be made before revocation); *Rombot*, 296 F. Supp. 3d at 387 (citation modified) (granting habeas relief where the record did not show that a field office director ever made the threshold determination that the petitioner's revocation was in the public interest and circumstances did not reasonably permit referral of the case to the equivalent of the Executive Associate Commissioner).

14

Although Petitioner raises additional grounds for relief,[3] because the Court concludes that the failure to make findings prior to revoking the OSUP constitutes a Due Process Clause violation, it need not address the other grounds. *See Ndoye*, 2026 WL 765635, at *5 (finding that because "the agency has refused to comply with . . . its own . . . regulations" for revoking OSUPs, "the Government has failed to provide Petitioner with the necessary process due to him under the Constitution" and therefore granted relief).

## IV.   Remedy

Upon finding a due process violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require."  28 U.S.C. §§ 2241(a), 2243. The traditional remedy in habeas is release from illegal custody.  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *accord Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."

Here, by violating its own regulations and thus Petitioner's due process rights, ICE caused Petitioner to be placed in custody.  It is unknowable whether, had the proper procedure been followed and Petitioner had been given a meaningful opportunity to respond and appeal to ICE's discretion, the same outcome would have followed. Therefore, the Court concludes that "dispos[ing] of the matter as law and justice require,"

---

[3] Specifically, Petitioner argues that (1) the Order of Revocation "lacked the required finding by a district director," (2) ICE "failed to provide the requisite notice of the specific reasons for the revocation of release and there were no changed circumstances," and (3) "ICE did not provide a meaningful opportunity to respond to specific reasons for revocation of release."  Petitioner's Opp. to Mot. to Dismiss, ECF No. 7 at 8-13.  This Court has addressed only the first argument.

15

requires Petitioner's release.  28 U.S.C. § 2243. This remedy aligns with numerous cases finding that the remedy for habeas petitioners held in custody following procedural due process violations is release.  *See, e.g., Funes v. Francis*, 810 F. Supp. 3d 472, 502-03 (S.D.N.Y. Nov. 24, 2025) (finding that the court must order the petitioner's release in "align[ment] with numerous cases releasing habeas petitioners held in custody following procedural due process violations" (collecting cases)).

## CONCLUSION

For these reasons, the Court GRANTS Petitioner's Amended Petition for Writ of Habeas Corpus, ECF No. 1, and DENIES the government's Motion to Dismiss, ECF No. 6.

It is therefore ORDERED that the government release Petitioner immediately, and he shall be subject to the conditions of his preexisting Order of Supervision.

It is further ORDERED that Petitioner is awarded costs and reasonable attorneys' fees. *See* 28 U.S.C. § 2412.

Respondents are ORDERED to certify compliance with this Court's Order by filing a letter on the docket no later than June 5, 2026.

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

**SO ORDERED.**

                                                              /s/ Barrington D. Parker
                                                    Hon. Barrington D. Parker Senior Circuit
                                                    Judge of the U.S. Court of Appeals for the
                                                    Second Circuit, sitting by designation

Dated: Buffalo, New York
       May 29, 2026